UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:99-CR-71 |
| ) | Judge McDonough |
| NORMAN T. SEXTON ) | |

OPPOSTION TO EARLY TERMINATION
OF SUPERVISED RELEASE

The United States of America opposes Norman "Tim" Sexton's motion for early termination of supervised release. Due to his past criminal activity, his use of violence and intimidation, and his friendships with law enforcement officers to avoid detection for his criminal acts, the United States respectfully submits Sexton should complete his full term of supervised release.

Sexton was convicted after a five-week trial of conspiring to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C). (R. 569, Amended Judgment.) Evidence presented at trial established Sexton trafficked in at least 15 kilograms of cocaine, which yielded a base offense level of 34. (PSR at ¶ 40.) After a four-level enhancement for his leadership role, Sexton's total offense level was 38. (*Id*. at ¶¶ 43, 49.) With a criminal history category of I, Sexton's guidelines range, capped by the statutory maximum, was 235 to 240 months. (*Id*. at ¶¶ 53, 72.) Judge Collier sentenced Sexton to 238 months' imprisonment, followed by a three-year period of supervised release.[1] (R. 497, Judgment; R. 569, Amended Judgment.)

---

[1] Sexton's conviction required the imposition of a term of supervised release for a period of *at least* three years. 21 U.S.C. § 841(b)(1)(C) (emphasis added).

1

Thereafter, the United States Sentencing Commission amended the drug quantity guidelines. Under the revisions, Sexton's new guideline range became 188 to 235 months. Sexton filed for a sentencing reduction pursuant to 18 U.S.C. §3582(c). Judge Collier granted Sexton's motion, resentenced him to 211 months, and left intact the three-year period of supervised release. (R. 602, Resentencing Order.)

Sexton benefited from the last administration's early release program and left prison on November 6, 2015, after serving 186 months and 17 days. He is scheduled to complete his term of supervised release on November 5, 2018.

Sexton was engaged in criminal activity for years. The jury convicted Sexton of conspiring to distribute cocaine from 1994 to 1999. (PSR at ¶ 1.) Marion County Sheriff Jim Webb testified at Sexton's detention hearing that he had received information from the late 1980s or early 1990s that Sexton was a large-scale cocaine trafficker who was associated with James Moon, another convicted cocaine dealer.[2] (R. 206, MJ Carter Report & Recommendation, at 5). Sheriff Webb's information included the fact that Sexton transported cocaine on the Tennessee River and would pick up the cocaine with codefendant Jimmy Legg under the guise of being commercial fishermen.[3]

During the investigation into Sexton's drug dealing, Sexton approached Sheriff Webb and asked whether an investigator was working for the Sheriff. When Sheriff Webb denied this, Sexton replied, "This looks like war." (*Id*.) Sheriff Webb took Sexton's statement as a threat. (*Id*.)

Sheriff Webb also testified at the detention hearing that arrests for cocaine in the Highway

---

[2] Moon was convicted in April 1994 in this Court of conspiring to distribute cocaine from 1987 to 1993. (*Id*., at 6.)
[3] Sexton admitted during a sworn deposition that he was introduced to commercial fishing by Moon and purchased a boat from Moon to conduct these activities. (*Id*.)

2

41 area of Marion County had significantly declined after Sexton's arrest and detention. (*Id*.) The Sheriff testified that there had been a similar significant decrease in cocaine arrests after the arrest and incarceration of Moon. (*Id*.)

Sexton's past history includes violent and assaultive behavior that induced fear in individuals who were associated with him. It also includes Sexton's commission of offenses with law enforcement associates or in their presence.

IRS Special Agent Lynn Barker was one of the law enforcement officers who worked on Sexton's investigation. Agent Barker testified during Sexton's detention hearing that he had interviewed numerous individuals, only some of whom were willing to talk about Sexton. (R. 62, Detention Transcript, Barker at 19.) All of the individuals contacted by Agent Barker who knew Sexton, feared him. (*Id.*)

Sexton and an off-duty Tennessee Highway Patrol Officer assaulted two off-duty Chattanooga Police Officers on June 19, 1999 at Browns Ferry Landing. (*Id.* at 16, 55-65, 84-89.) In addition, Sexton was involved in a barroom brawl at the Rhode House, scene of some of the undercover purchases of cocaine charged in this case, in December 1998. Again, Sexton was in the company of Tennessee Highway Patrol Officers at the time of the fight. (*Id*. at 17, 79-83.) On August 30, 1999, Sexton and some of his law enforcement associates confronted investigators who had taken photographs of Sexton in the presence of his law enforcement friends. (*Id.* at 18.) In addition, Sexton also impersonated a law enforcement officer while in the presence of his law enforcement associates. (*Id.* at 16-17, 84-85.) Even Sexton's own witnesses corroborated that he had engaged in physical altercations in the past. (R. 65-66, Detention Transcripts, Brackett at 226-27; Stephens at 297-302). Furthermore, as set forth in the PSR, Sexton has arrests for assault charges in 1991 and 1994 in Marion County, Tennessee, although these charges were ultimately

3

dismissed. (PSR at ¶¶ 54 and 55).

Several witnesses who testified at trial also expressed fear of Sexton. Three people were charged along with Sexton in his drug conspiracy. Only one, Sarah Moss, pled guilty to the conspiracy and agreed to cooperate. While testifying at Sexton's trial, Moss recanted and attempted to exculpate Sexton. (R. 528, Trial Transcript. at 643-44.) Based upon her false trial testimony, Moss was later convicted of perjury. *United States v. Moss*, 69 Fed. App'x. 724 (6th Cir. July 11, 2003).

Sexton's incarceration was not without incident. As set forth in the Government's response to Sexton's Motion to Reduce Sentence (R. 600.), the Bureau of Prisons imposed disciplinary sanctions against Sexton on five separate occasions during his incarceration.[4]

Upon release from prison, Sexton has returned home to the Haletown community. The same community where he engaged in criminal activity for several years. One road provides basic access to and from the area. The area residents know each other and Sexton well. These circumstances made detecting Sexton's drug activities difficult when agents originally investigated him.

Sexton currently manages his sister's restaurant. With limited apparent financial resources, he has acquired real estate and rental property. The undersigned understands that Sexton seeks to become self-employed with a delivery business that involves interstate travel. Sexton claims he could make much more money doing this type of work.

Probation Officer Doug Corn has told the undersigned that Sexton has been a model

---

[4] None of the offenses were major, but spanned a ten-year period. The offenses were for absence from assignment (2013), possessing an unauthorized item (2010 and 2006), destroying property (2004), and failing to follow safety regulations (2003).

4

supervisee. The United States hopes that Sexton has reformed and is now leading a law-abiding life. If supervision has benefited Sexton after his release from prison, the United States believes it should continue for the complete intended term.

Based on the foregoing, the United States requests that the Court deny Sexton's motion for early termination of supervised release.

>
> DOUGLAS OVERBEY
> UNITED STATES ATTORNEY
>
> By: *s/Gregg L. Sullivan*
> Gregg L. Sullivan
> Assistant United States Attorney
> 1110 Market Street, Ste. 515
> Chattanooga, TN 37402
> (423) 752-5140

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2018, a copy of the foregoing Government's Response in Opposition to Early Termination of Supervised Release was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

> By: *s/Gregg L. Sullivan*
> Gregg L. Sullivan
> Assistant United States Attorney